STATE of Maine

v.

George O'DONNELL.

Supreme Judicial Court of Maine.
Argued March 14, 1985.
Decided July 11, 1985.

Rae Ann French (orally), Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for plaintiff.

Rowe & Sanders, David M. Sanders (orally), Livermore Falls, for defendant.

Before McKUSICK, C.J., NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

A Superior Court jury, Androscoggin County, found the defendant, George O'Donnell, guilty of aggregated theft, 17–A M.R.S.A. §§ 353, 352(5)(E) and of violations of the prearranged funerals law, 32 M.R.S.A. § 1401. The defendant appeals the court's subsequent restitution order and imposition of a six-year prison term, with all but three years suspended. He alleges the court sentenced him illegally by (1) ordering him to make restitution for wrongdoing for which he was never indicted, tried, or convicted, (2) requiring him to make restitution without considering his ability to pay, and (3) considering that same wrongdoing as a factor in deciding the term of imprisonment. With the exception

of certain portions of the restitution order, we affirm the judgment.

## I.

At sentencing, the court ordered the defendant, *inter alia*, as a condition of probation, to make restitution of $15,501 within twenty-four months to fourteen victims:

| | | |
|---|---|---|
| 1. | Emily Huntington | $ 600 |
| 2. | Leo Bilodeau | 1781 |
| 3. | Eleanor Henery | 900 |
| 4. | Lea Donahue | 1000 |
| 5. | Delia Marceau | 590 |
| 6. | Henery Marceau | 1800 |
| 7. | Norman Jolicoeur | 500 |
| 8. | Norman Bonnevie | 1185 |
| 9. | Marie LeClerc | 2090 |
| 10. | Marie McGraw | 1025 |
| 11. | Donia Moreau | 1570 |
| 12. | Bella Morin | 675 |
| 13. | Phillip Spruce | 1285 |
| 14. | Earle Welch | 500 |
| | Total: | $15,501 |

Following a later hearing on the defendant's motion to correct the sentence, pursuant to M.R.Crim.P. 35, the Court modified the order, striking restitution in those instances where the defendant's criminal conduct occurred more than six years prior to the commencement of prosecution. As modified, the order eliminated the defendant's restitution obligations to Jolicoeur, Bonnevie, LeClerc, McGraw and Welch and required him to pay a total of $10,201 to the remaining victims. On appeal before this Court, both the State and the defendant agree the restitution order should be amended still further, eliminating the defendant's obligations to victims Spruce and Moreau, as also barred by the statute of limitations. This would reduce the total of the defendant's obligation to $7346, but it would, nevertheless, require that he make restitution in the amount of $600 to Emily Huntington, a victim not named in the indictment.[1] The defendant argues that the Court exceeded its authority by ordering him to make restitution for a crime for which he was never indicted. The State maintains that the absence of an express

statutory prohibition, the imperatives of the restitution provision of our criminal code, and the facts of this case—specifically, the defendant's "admission" and his expressed desire to make reparation—combine to provide a sufficient basis for the restitution order. We agree with the defendant.

Under the sentencing provisions of our criminal code, a court is authorized to require "[e]very natural person convicted of a crime ... to make restitution *as authorized by chapter 54.*" (emphasis added) 17–A M.R.S.A. § 1152(2–A). Whether restitution is imposed directly or as a condition of probation under § 1204(2–A)(B), a sentencing justice may only require a convicted person "[t]o make restitution pursuant to chapter 54...." *Id.* To require restitution beyond the limits of the statute is an invalid order that exceeds the court's authority.

In chapter 54, the Legislature has set forth in detail, *inter alia*, the purposes of restitution, the criteria to be employed by the sentencing judge, and the conditions under which restitution may be required. The purpose of restitution is "to encourage the compensation of victims by the person most responsible for the loss incurred by the victim, the offender." 17–A M.R.S.A. § 1321. Moreover, the Legislature has declared that, beyond simply helping victims of crime, "repayment ... by the offender to the *victim of his crime* can operate to rehabilitate the offender in certain instances." (emphasis added) *Id.* Because of the defendant's admission at trial regarding money obtained from Emily Huntington and his subsequent offer to make reparations, the State would have us interpret "victim" to include a person who suffers economic loss as a result of an uncharged crime for which the defendant has not been convicted. We reject such a loose construction of the statute.

1. The charge of aggregated theft alleged six instances of theft against six different parties: Leo Bilodeau, Eleanor Henery, Lea Donahue, Delia Marceau, and Henery Marceau. A restitution order restricted solely to these victims would require the defendant to repay $6746.

█ The definitions section of chapter 54 defines "offender" as "any natural person *convicted of a crime.*" (emphasis added) § 1322(5). "'Victim' means a person who suffers personal injury, death or economic loss *as a result of a crime....*" (emphasis added) § 1322(7). Certainly, Emily Huntington may be considered a "victim" in the sense that her money was not utilized in the way she intended. This does not, however, qualify her as a victim of a crime for which the defendant/"offender" was never charged or convicted. *See State v. Eilts,* 23 Wash.App. 39, 596 P.2d 1050, 1053 (1979). We conclude the Legislature intended "offender" to be limited to a person convicted of a crime alleged in the charging instrument and "victim" to mean a person who suffers "personal injury, death or economic loss" as a result of *that* crime. Plainly, the defendant was never *convicted of a crime* against Emily Huntington.[2]

█ Our interpretation of the statute is reinforced by the provision in section 1324(2), set forth in footnote 3, that designates a county in which the offense was prosecuted as an authorized claimant if the victim refuses restitution or if the identity of the victim cannot be ascertained. Clearly, an uncharged crime is also of necessity an unprosecuted offense, and the Legislature could not have intended a defendant charged in one county to make restitution to another county as a substitute authorized claimant with regard to a pattern of criminal activity involving victims from more than one county.

Moreover, section 1325(1)(A) mandates that the court, in determining the amount of authorized restitution, give consideration to the contributory misconduct, if any, of the victim. Section 1325(2)(B) provides that the court may not authorize restitution to a victim who is an accomplice of the offender. Section 1327 requires the court to deduct restitution ordered and paid from any judgment in a civil action brought by a victim "based on the same facts." One would expect the facts of a charged crime to be fully developed during trial or sentencing, so that section 1327 may be meaningfully applied. One would not expect the facts relating to uncharged crimes and their collateral victims to be as carefully explored. Nor could the Legislature have contemplated an in-depth judicial inquiry with respect to the possible complicity or contributory misconduct of alleged collateral victims who were not the victims of the offense charged.

█ It is also readily apparent that we are not permitted to treat this restitution order merely as "any other" condition of probation, under § 1204(2–A)(M).[3] Our criminal code permits the court to "attach

---

**2.** Nor do we find any other provision within chapter 54 which conceivably authorizes the payment of restitution to Huntington.

Restitution may be authorized for:
1. Victim. The victim or a dependent of a deceased victim;
2. County. The county where the offense was prosecuted if the victim voluntarily refuses restitution or if the identity of the victim cannot be ascertained;
3. Person providing recovery. Any person, firm, organization, corporation or government entity which has provided recovery to the victim as a collateral source, but only to the extent that such recovery was actually made; and
4. Person acting on behalf of victim. Any person legally authorized to act on behalf of the victim.

17-A M.R.S.A. § 1324. On none of these counts does Ms. Huntington qualify as a claimant for whom restitution may be ordered.

**3.** Cases from jurisdictions that analyze the appropriateness of restitution orders in terms of whether restitution, as a condition of probation, is reasonably related to the rehabilitation of the convicted person are not useful. *See, e.g., State v. Reese,* 124 Ariz. 212, 603 P.2d 104, 107 (Ariz.App.1979); *State v. Cummings,* 120 Ariz. 69, 583 P.2d 1389, 1390 (Ariz.App.1978). Based on the court's authority to impose reasonable conditions of probation under a statute that does not codify the aspects of restitution as comprehensively as does chapter 54, these precedents do not furnish a basis for us to conclude under our code that a judge has unbridled discretion, circumscribed only by the requirements of due process, to require restitution if reasonably related to the rehabilitation of the defendant.

such conditions of probation ... as it deems reasonable and appropriate" in the sentencing of a convicted person. § 1204(1). The Legislature, however, has specifically authorized at least a dozen conditions of probation that the court may require. §§ 1204(2–A)(A)—1204(2–A)(L). Listed among those conditions is section 1204(2–A)(B), which authorizes the court to require a convicted person "[t]o make restitution pursuant to chapter 54 to each victim of his crime...." An additional catchall provision permits the court "[t]o require the convicted person to satisfy *any other conditions* reasonably related to the rehabilitation of the convicted person or the public safety or security." (emphasis added) § 1204(2–A)(M). Clearly, these "other conditions" do not encompass those such as restitution, which the Legislature has already taken the trouble to designate specifically. Moreover, the Legislature's instructions with regard to restitution orders are clear: a convicted person may be required to make restitution only "pursuant to chapter 54." Thus, chapter 54, which regulates all aspects of restitution, is a legislative judgment delimiting the court's authority. A judge is not at liberty to fashion his own orders of restitution outside the scope of this statute.

■ Accordingly, despite the defendant's rather equivocal admission and offer to make reparation, the court exceeded its sentencing authority by requiring him to make restitution for an uncharged crime. The restitution order must therefore be further amended to eliminate the defendant's obligation to Huntington.

## II.

The defendant argues further that the sentencing justice failed to consider the statutory criteria for ordering restitution. He maintains the Court failed to inquire into his financial status and imposed an order creating an excessive financial hardship on him in direct contravention of our teaching in *State v. Blanchard*, 409 A.2d 229, 237–39 (Me.1979). We conclude that the sentencing justice acted properly under the statute, and we find the defendant's situation to be readily distinguishable from that set forth in *Blanchard*.

17–A M.R.S.A. § 1325(2)(D) states that restitution shall not be authorized where the amount or method of payment creates an excessive financial hardship on the offender or his dependents. In making this determination, the court considers "all relevant factors ... including, but not limited to the following: (1) The number of the offender's dependents; (2) The usual living expenses of the offender and his dependents; (3) The special needs of the offender and his dependents, including necessary travel expense to and from work; (4) The offender's income and potential earning capacity; and (5) The offender's resources." *Id.*

■ On a significant point, we find the present case to be similar to *State v. Murphy*, 431 A.2d 58, 59 (Me.1981) where the willingness of the defendant to pay restitution was considered a "relevant factor," justifying the trial court's conclusion that restitution could be made within the time provided for in the sentence. We note that the defendant before us today repeatedly stated his desire to make reparation. On at least three separate occasions—at sentencing, during allocution, and in a letter to the sentencing justice—he expressed a willingness to repay his victims.

Moreover, from the presentence report and other portions of the record, the sentencing justice had before him the following information: (1) the defendant had only two dependents (ages 17 and 18) living at home; (2) his wife was an experienced medical assistant; (3) the defendant grossed approximately $300 (with prospects for as much as $900) per week in his job as a truck driver; (4) the defendant's employer promised to employ him after his release; (5) the defendant himself represented he could commit 30% of his weekly take-home pay towards restitution. In *Blanchard*, the defendant was sentenced to a term of imprisonment for five years,

ordered to repay over $55,000, and found to be utterly without assets. The prospects for his ever being able to make restitution appeared bleak, and the likelihood of his enduring severe economic hardship appeared certain. Given the facts of the instant case, we find there is every indication that this defendant will be able to meet the requirements of the final restitution order without enduring the excessive financial hardship proscribed by statute.

### III.

■■■ Finally, did the sentencing justice differentiate between the incidents of theft for which the defendant was convicted and those that found their way into evidence at trial? We find that he did. To imprison a defendant for activity for which he has not been charged or convicted is a violation of due process, *State v. Rathburn*, 140 Vt. 382, 442 A.2d 452, 455 (1981). In the instant case, however, the sentencing justice demonstrated an awareness of the need for differentiation by separating in his mind the criminal activities alleged in the indictment from the unalleged activities disclosed at trial. We must presume, therefore, that those incidents did not improperly contribute to the sentence imposed. *Id.*

Moreover, as the sentencing justice noted:

> The evidence here of accounts, other than those charged in the indictment, are extremely relevant, since they indicate a continuing course of conduct over a substantial period of time. Also the court is not limited to the evidence at trial, and these factors were in evidence at trial, even though they were not specifically charged in the indictment.

We have previously noted that a sentencing justice may properly consider a defendant's "history of undesirable behavior pattern[s]" as a factor in determining appropriate punishment. *State v. Samson*, 388 A.2d 60, 68 (Me.1978). Accordingly, we find nothing objectionable in treating trial evidence of a defendant's uncharged conduct regarding other victims as relevant information for sentencing purposes on the ground that it indicates "a continuing course of conduct over a substantial period of time."

The entry is:

Judgment affirmed except as follows:

Restitution order as to victims Spruce, Moreau, and Huntington vacated.

Remanded with instructions to amend restitution order to require total payment of $6746, consistent with the opinion herein.

McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN and GLASSMAN, JJ., concur.

WATHEN, Justice, with whom McKUSICK, Chief Justice, and VIOLETTE, Justice, join, concurring.

I concur in the result reached in the Court's opinion but I write separately to delineate the extent to which I follow the Court's rationale in Part I. On the facts of this case, I agree that the Superior Court had no authority to require that the defendant make restitution to a victim not named in the indictment. I would come to the opposite conclusion, however, if the record contained evidence of defendant's unequivocal consent, or agreement as part of a plea bargain. There are numerous occasions where, with the consent of the parties, the courts include restitution orders for the benefit of acknowledged victims not named in an indictment. I would not interpret the statute to prohibit this practice. To do otherwise, would be to exalt form over substance.